ALFRED THORNE v. MINNEAPOLIS GENERAL ELECTRIC COMPANY.[1]

February 23, 1906.

Nos. 14,555—(182).

**Assumption of Risk.**

Action to recover damages on account of personal injuries sustained by reason of the alleged negligence of the defendant in failing to repair a loose tire on the wheel of a wagon which the plaintiff was required to use as the employee of the defendant. *Held*, that the finding of the jury upon the question of the assumption of the risks by the plaintiff is so manifestly against the great preponderance of the evidence that the trial court, in the exercise of a sound discretion, ought to have granted the defendant's motion for a new trial.

Appeal by defendant from an order of the district court for Hennepin county, Dickinson, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Reversed and new trial granted.

*Koon, Whelan & Bennett,* for appellant.

*Hall & Kolliner,* for respondent.

START, C. J.

Action to recover damages on account of personal injuries sustained by reason of the alleged negligence of the defendant in failing to re-

[1]Reported in 106 N. W. 253.

pair a loose tire on the wheel of a wagon which the plaintiff was required to use as the employee of the defendant. The verdict was for the plaintiff in the sum of $3,708, and the defendant appealed from on order denying its motion for judgment in its favor notwithstanding the verdict, or for a new trial.

It is practically conceded that on June 9, 1904, and for some eight years prior thereto, the plaintiff was employed by the defendant in the conduct of its business as a teamster, and, further, that on the day named he was driving the team of the defendant along a street in the prosecution of its business, when the tire, which had been loose for some time, on one of the wheels of the wagon in which he was riding, broke, and the broken end thereof, turning with the wheel, caught or struck the seat upon which he was sitting, whereby he was thrown down and seriously injured. The basis of the plaintiff's claim to recover is, briefly stated, that the tire was loose and he notified the defendant's general foreman, Mr. Laird, whose authority in the premises is conceded, of the defect, and requested that it be repaired; that the foreman promised to do so; that the plaintiff relied upon the promise, but the promise was not kept; and, further, that the defect was the cause of his injury.

The defendant here contends that the evidence does not establish any negligence on its part which was the proximate cause of the plaintiff's injury, that the evidence is not sufficient to sustain a finding to the effect that the defendant promised to repair the tire, and that the plaintiff relied upon the promise; but, on the contrary, that the evidence is conclusive that he assumed the risks incident to his use of the wagon with a loose tire, and, further, that the damages awarded are excessive.

We assume, for the purposes of a decision of this appeal only, that the evidence was sufficient to establish the alleged negligence of the defendant, and come directly to the controlling question whether the plaintiff assumed the risks. The plaintiff knew of the defect. The construction and operation of the wagon wheel, including the tire, were not complicated, but simple and obvious to an experienced teamster, such as the plaintiff was. Therefore, unless he was induced to use the wagon, relying, and was justified in so relying, upon the alleged promise of the defendant to make the repair, it must be held that he knew of the defect in the wagon and fully appreciated the risks and hazards to his

personal safety, if any, in using it, and that he assumed them.   Wexler v. Salisbury, 91 Minn. 308, 98 N. W. 95.

The question of his assumption of the risks narrows, then, to an inquiry whether the evidence is sufficient to sustain an affirmative finding to the effect that the promise to repair was made, that the plaintiff was justified in relying and did rely upon the promise, and, induced thereby, continued to use the wagon.   It is practically conceded that it was a part of the duties of the plaintiff to care for the team and wagon, which were used in hauling materials and taking the defendant's workmen to and from their work.   The tire of the wheel was four inches wide, and was fastened to the rim of the wheel by two bolts in such a manner that, even if the tire became loose, it would be held in place by the bolts, but there would be danger of the fellies of the wheel being destroyed if the loose tire was not repaired.   It is apparent that this was the most obvious reason why the tire should be repaired.

The plaintiff's testimony relevant to the question whether or not he assumed the risks was to the effect following:   That he was sixty five years of age at the time of the accident, and had been employed by the defendant for eleven years, during the last eight years of the time as a teamster.   That about May 20 he discovered that the tire on the right fore wheel of his wagon was loose, and called the attention of the general foreman to the defect.

> Q. In this conversation, what did you say to him, and what did he say to you?   A. Well, I asked him if I couldn't get it set, and he said: "We are busy just now, and we will have to, later on, get it fixed."   And I relied on it.   That the shop, operated by Mr. Loftus, where the defendant had its blacksmith work done was within a few blocks of its plant and the barn where the team and wagon were kept.   That five days past, the tire had not been set, and the plaintiff again called the attention of the foreman to the defect.   Q. And what did he say when you told him that?   A. Well, he said: "We're busy to-day, and a little later on we will have to get it fixed."   Q. And you relied upon that statement?   A. Yes, sir; I did.   Q. When he said he would have it fixed later, did you believe that he would have it?   A. I did, sir.   Q. Did the condition of the weather at that time affect the

looseness of the tire? A. It did; yes, sir. Q. In what respect? A. The dry weather loosened it more; dried away the woodwork from it. * * *

Q. When, after this second talk, was the wheel the subject of any other talk between you and Mr. Laird? A. Not until that Saturday before Decoration Day, that I remember of. Q. Saturday before Decoration Day? A. Yes, sir. Q. Let us see. Decoration Day last year was on Monday, the 30th of May? A. Yes, sir. Q. So this Saturday would be the 28th? A. Yes, sir. Q. Now what was said between you two men at that time? A. At that time? Q. Yes. A. Well, he says—he says, "Thorne," he says, "Decoration Day you take that wagon to a shop and see if they won't fix it." I says, "I will do so, if they will work." Q. To whom did you refer—the blacksmith? A. Mr. Loftus. Q. Was he the man who done all this class of work for you? A. Yes, sir; he done the work. Q. For the electric company? A. For the electric company.

That on Tuesday morning May 31 the plaintiff reported for work. Q. Tell us what was said at that time. This was Tuesday, May 31. A. Well, he says, "Did you get that tire set, Thorne?" I said, "No, sir; Mr. Loftus wouldn't work on that day, and he says we can get it set in the morning, or we can get it set whenever we go there"—something to that effect—"we can get it set." Q. Well, what did he say to that? A. Well, he looked around and didn't say much of anything, and said: "We're in a hurry to get to Twentieth Avenue North. Drive out." So I—I got out of there and went to work. Q. And you went to work as you always did? A. Yes, sir.

And further that it would have taken about two hours to have set the tire, and that the accident occurred on June 9. Q. Did Mr. Laird, at any time between the 20th day of May and the 9th day of June, give you any time—allow you any time—during which you could get this wagon repaired? A. No, sir. * * * Q. You understand, Mr. Thorne, that the question was—you realized that the tire coming off, and the position of the wheel —whether or not you realized some danger to yourself? A.

I did to a certain extent. The tire coming off might involve some danger.

The general foreman, Mr. Laird, testified on behalf of the defendant with reference to the question to the effect following: That the plaintiff made no complaint whatever to him with reference to the wagon prior to the morning of May 28, the Saturday before Decoration Day. When the plaintiff asked him to look at the wagon, that he did so, found that the tire was loose, and told him the matter with it was that he had been driving on the street car tracks and that he must stop it; and, further, to stop at the blacksmith shop, get the iron, and make arrangements to have it put on the wheel Decoration Day, Monday. That nothing further was said at that time as to the matter.

Q. What was the next thing you knew about these tires? What conversation did you have about them? A. Well, we didn't work on Decoration Day; that's the reason I wanted the wagon fixed, so we wouldn't lose any time. And on Tuesday morning I came by the wagon and I saw the tires hadn't been fixed, and I asked Thorne why the tires hadn't been fixed, and he said the blacksmith wouldn't work on Decoration Day. Q. Go on and state what else was said between you. A. Then I told him to go up there on his way, have the tires measured, go out and set the gang [to work] and return and have the tires put on. Q. Who was there at that time? A. Mr. Rice was there at that time. Q. He was the foreman of this line crew? A. Yes, sir. Q. Anything else said between you? A. No, sir; not that morning. They drove off that morning. * * * Q. Now, after you told him to get this tire fixed, as you stated, "Come back and get it fixed," did he speak to you anything further about the tires until the accident occurred? A. No, sir. Q. Did you know anything about the tires having been fixed from that time on until the accident occurred? A. I didn't. I supposed they had been fixed.

Mr. Rice was called as a witness for the defendant, and corroborated the testimony of Mr. Laird, which we have quoted; but the plaintiff introduced in rebuttal evidence tending to show that the witness had made statements out of court to the contrary.

The plaintiff's own testimony, taking the most favorable view of it for him, and considering it in connection with the admitted facts of the case, makes the question whether he did not as a matter of law assume the risks a close one. However, we are not so clearly satisfied that the evidence is conclusive of the question as to justify us in treating it as a question of law, and we accordingly hold that the defendant is not entitled to judgment absolute in its favor notwithstanding the verdict. This brings us to the question whether the trial court erred in denying the defendant's motion for a new trial. We have carefully considered this question, and are of the opinion, which is based largely upon the plaintiff's evidence and the admitted facts, that the finding of the jury by their verdict on the question of the plaintiff's assumption of the risks is so manifestly against the great preponderance of the evidence that the trial court, in the exercise of a sound discretion, ought to have set the verdict aside and submitted the case to another jury.

It follows that the order appealed from must be reversed and a new trial granted. So ordered.